UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROBERT W. MERRITT,

    Plaintiff,

v.                                     Case No.  5:21-cv-37-TKW/MJF

TRANSPORT OFFICER 1, *et al.*,

    Defendants.
                                         /

## REPORT AND RECOMMENDATION

Plaintiff commenced this civil action pursuant to 42 U.S.C. § 1983. He alleges that two Transport Officers employed by the Florida Department of Corrections ("FDC") violated the Eighth Amendment when they failed to properly secure him in the transport vehicle and dislocated his leg after pulling on it. He also asserts an Eighth-Amendment claim against Dr. Steele, who was employed by Centurion of Florida, because Dr. Steele failed to provide adequate medical care when he performed surgery on Plaintiff's hip.

The facts as presented in Plaintiff's second amended complaint, Doc. 13, fail to state a facially plausible claim for relief against Dr. Steele. The facts also fail to state a claim for injunctive relief and an official-capacity claim against the Transport Officers. The undersigned, therefore, recommends that Plaintiff's official-capacity

claim against the Transport Officers, claim for injunctive relief, and claim against Dr. Steele be dismissed with prejudice, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief can be granted.[1]

## I. BACKGROUND

**A.     Plaintiff's Allegations Against the Transport Officers**

The facts set forth below are drawn from Plaintiff's second amended complaint and are presumed to be true. Plaintiff is an inmate in the custody of the FDC. Plaintiff is paralyzed from the chest down and does not have "trunk control" or control of his balance. Doc. 13 at 5. Plaintiff, therefore, utilizes a wheelchair.

On November 28, 2016, two FDC Transport Officers were transporting Plaintiff from Gulf Correctional Institution ("Gulf C.I.") to "RMC."[2] *Id.* These officers utilized a "black box" wrist restraint on Plaintiff and placed Plaintiff's wheelchair into the transport van. The Transport Officers failed to secure Plaintiff's wheelchair and failed to secure Plaintiff in his wheelchair. *Id.*

Plaintiff informed the Transport Officers that he was paralyzed and that he did not feel safe riding unsecured in the transport vehicle. *Id.* Specifically, Plaintiff

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

[2] Plaintiff does not specify the names of the two Transport Officers and he does not identify what "RMC" is.

warned the Transport Officers that he was unable to protect himself from falling over or being thrown from the wheelchair if the officers turned too sharply or hit the brakes too quickly. One of the Transport Officers responded: "Well don't fall then." *Id.*

While they were leaving Gulf C.I., the Transport Officer driving the vehicle began to drive erratically and turned sharply. Doc. 13 at 5-6. Plaintiff was thrown from his wheelchair and suffered a laceration on his head and bruises on his body.

The Transport Officers stopped the van and went to the back of the van. *Id.* at 6. In order to pick Plaintiff up and place him back in his wheelchair, the Transport Officers "grabbed Plaintiff by his left leg and pulled and twisted the Plaintiff's leg in a cruel and ruthless way." *Id.* The Transport Officers returned to Gulf C.I. and took Plaintiff to the infirmary to be assessed by a nurse.

B.     **Plaintiff's Allegations Against Dr. Steele**

In February 2017, Plaintiff informed Dr. Irizary that the Transport Officers had twisted and pulled his leg when transporting Plaintiff. Doc. 13 at 6. Dr. Irizary, therefore, ordered an x-ray image of Plaintiff's left hip and leg. Because the x-ray image was unclear, Dr. Irizary ordered a magnetic resonance image ("MRI"). *Id.*

Based on the MRI, Dr. Irizary recommended that Plaintiff see an orthopedic specialist at RMC.[3] This orthopedic specialist referred Plaintiff to Dr. Steele. *Id.*

Dr. Steele ordered an x-ray image of Plaintiff's left hip and leg. *Id.* Based on the x-ray image, Dr. Steele concluded that Plaintiff's hip was dislocated. Dr. Steele advised Plaintiff that surgery was necessary to correct the dislocation. Plaintiff asserts, however, that Dr. Steele failed to inform Plaintiff that there was a possibility that the surgery would not work because Plaintiff was paralyzed. *Id.* at 7. On September 27, 2017, Dr. Steele performed the surgery on Plaintiff. Doc. 6 at 11.

After the surgery, Plaintiff continued to have problems with his left leg and hip. For example, in October 2017, after Plaintiff's hip bone became dislocated, he was given a leg brace to hold the hip bone in the socket. *Id.* The hip and leg brace was removed on December 6, 2017. Nevertheless, Plaintiff continued to suffer from hip and leg dislocation.

On February 2, 2018, another orthopedic specialist, Dr. Winters, concluded that the surgery was unsuccessful because Plaintiff was "paralyzed and the cartilage and muscle w[ould] not grow around and hold the leg in place." Doc. 15 at 7. Dr. Winters stated that he would not have performed the surgical procedure that Dr. Steele had performed. *Id.*

---

[3] Plaintiff does not specify the name of this orthopedic specialist.

**C.      Claims and Relief Requested**

In this civil action, Plaintiff has asserted three claims against Defendants:

- infliction of cruel and unusual punishments, in violation of the Eighth Amendment, against the Transport Officers;

- deliberate indifference to a serious medical need, in violation of the Eighth Amendment, against Dr. Steele; and

- an unspecified violation of the Fourteenth Amendment against an unspecified defendant.

Plaintiff sues Defendants in their individual and official capacities. From each Defendant Plaintiff seeks $350,000 in compensatory damages and $2,000,000 in punitive damages. Plaintiff also requests extensive injunctive relief. For example, Plaintiff seeks an injunction that requires Defendants to provide Plaintiff a particular type of bed and specific types of medical care for his hip.

## II. STANDARD

Because Plaintiff is a prisoner, the court is required to review his complaint, identify cognizable claims, and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b). Determining whether a complaint states a claim upon which relief can be granted is governed by the standard set forth in Rule

12(b)(6) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(b)(6); *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility that the defendant acted unlawfully is insufficient. *Id.* Rather, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (reiterating that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Mere conclusory and vague allegations are insufficient to state a claim, however. *See L.S.T., Inc., v. Crow*, 49 F.3d 679, 684 (11th Cir. 1995) (per curiam); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Similarly, a formulaic recitation of the elements of a claim are insufficient. *Twombly*, 550 U.S. at 555.

### III. DISCUSSION

### A. The Transport Officers

#### 1. *Failure to State Official-Capacity Claims Against the Transport Officers for Damages and Injunctive Relief*

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S 658, 690 n.55 (1978)); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Thus, in a section 1983 action "a claim against a defendant in his official capacity is the same as a claim against his employer." *Christman v. Saint Lucie Cnty.*, 509 F. App'x 878, 879 (11th Cir. 2013) (citing *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 n.2 (1997)); *Faulkner v. Monroe Cnty. Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013) ("A suit against a person in their official capacity is be treated as a suit against the entity.").

The Eleventh Amendment generally is a bar to suit for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacity, unless the state has consented to suit, Congress has abrogated the immunity, or the plaintiff proceeds under *Ex parte Young*. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Seminole Tribe of Fla.*

v. *State of Fla.*, 11 F.3d 1016, 1021 (11th Cir. 1994) (citing *Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)).

In this case, a suit against the Transport Officers—who are employees of the FDC—in their official capacities is a suit against the FDC. The FDC, a state agency, is "clearly the equivalent of the State of Florida for the Eleventh Amendment purposes." *Walden v. Fla. Dep't of Corr.*, 975 F. Supp. 1330, 1331 (N.D. Fla. 1996). The State of Florida has not waived immunity and Congress has not expressly abrogated state immunity in section 1983 cases of this type. *See Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) ("It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in Section 1983 damage suits, [and] Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages.") (internal citation and quotations omitted). Thus, the Eleventh Amendment is a bar to Plaintiff's claim for monetary damages against the Transport Officers to the extent they are sued in their official capacities.

"While state defendants sued in their official capacity for monetary damages under § 1983 are immune from suit under the Eleventh Amendment, they are not immune from claims seeking prospective declaratory or injunctive relief." *Smith v. Fla. Dep't of Corr.*, 318 F. App'x 726, 728 (11th Cir. 2008) (first citing *Powell v. Barrett*, 496 F.3d 1288, 1308 & n. 27 (11th Cir. 2007); then citing *Fla. Ass'n of*

*Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1220 (11th Cir. 2000)). Indeed, "[u]nder the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), there is a long and well-recognized exception to this rule for suits against state officers seeking prospective equitable relief to end continuing violations of federal law." *Fla. Ass'n of Rehab. Facilities, Inc.*, 225 F.3d at 1220.

In order for *Ex parte Young* to apply, there must be an ongoing violation of federal law by a state official as opposed to a federal law being "violated at one time or over a period of time in the past." *Id.*; *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999) ("*Ex parte Young* requires an allegation of an ongoing and continuous violation of federal law."). In other words, "*Ex parte Young* applies to cases in which the relief against the state official directly ends the violation of federal law, as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or simply to compensate the victim." *Fla. Ass'n of Rehab. Facilities, Inc.*, 225 F.3d at 1219; *Swain v. Junior*, 961 F.3d 1276, 1299 ("Under *Young*, a plaintiff may seek prospective injunctive relief to remedy ongoing state violations of federal law by suing a state official in his official capacity."). Thus, "[c]ompensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." *Summit Med. Assocs., P.C.*, 180 F.3d at 1337 (quoting *Papasan v. Allain,* 478 U.S. 265, 277-78 (1986)).

Although Plaintiff seeks injunctive and declaratory relief, Plaintiff has not alleged an ongoing denial of his constitutional rights. That is, Plaintiff does not seek injunctive relief to stop current violations of his constitutional rights by the FDC. Rather, Plaintiff alleges that his rights were violated one time in the past. Because Plaintiff's request for injunctive relief seeks only to vindicate a past wrong, he has failed to state a claim for injunctive relief. His official-capacity claims against the Transport Officers should be dismissed.

### 2. *Failure to State Individual-Capacity Claims Against the Transport Officers for Injunctive Relief*

Under section 1983, state officers sued in their individual capacities may be sued only for money damages. *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.") (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)); *Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) (noting that section 1983 does not permit injunctive relief against state officials sued in their individual capacities); *Jones v. Buckner*, 963 F. Supp. 2d 1267, 1281 (N.D. Ala. 2013). For this reason, the District Court also should

dismiss Plaintiff's individual-capacity claims against the Transport Officers to the extent Plaintiff seeks injunctive relief.[4]

## B.   Defendant Dr. Steele

### 1.   *Failure to State an Individual-Capacity Claim Against Dr. Steele for Damages and Injunctive Relief*

The Supreme Court has held that a "prison official's 'deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To state an Eighth-Amendment claim of deliberate indifference to a serious medical need, a plaintiff must allege:

(1)   he had a serious medical need;

(2)   the defendant was deliberately indifferent to that need; and

(3)   there is a causal connection between the defendant's act or omission and the constitutional deprivation.

*Patel v. Lanier Cnty. Ga.*, 969 F.3d 1173, 1188 (11th Cir. 2020).

---

[4] Additionally, Plaintiff lacks standing to seek the injunctive relief that he requests. "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994). Plaintiff's complaint contains no allegations of ongoing constitutional violations or threats of future injury.

Deliberate indifference is a higher standard than simple negligence and entails three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow*, 320 F.3d at 1245 (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)); *see Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)); *see also Farmer v. Brennan*, 511 U.S. 825, 839 (1994) (defining deliberate indifference as conduct that is reckless; that evinces a knowing, conscious disregard). "An official disregards a serious risk by more than mere negligence when he or she knows that an inmate is in serious need of medical care, but he or she fails or refuses to obtain [or intentionally delays] medical treatment for the inmate." *Nam Dang v. Sheriff, Seminole Cnty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (citations and quotations omitted).

A complete denial of readily-available treatment for a serious medical condition constitutes deliberate indifference. *See Harris v. Coweta*, 21 F.3d 388, 393 (11th Cir. 1994). But "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant

to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). In other words, a mere difference in a medical opinion between a doctor and an inmate as to the inmate's diagnosis or course of treatment does not establish deliberate indifference. *Id.* at 1505; *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that when an inmate receives medical treatment but desires a different mode of treatment, the care provided does not amount to deliberate indifference). Whether governmental actors should have employed "additional diagnostic techniques or forms of treatment" is a "classic example of a matter for medical judgment" and, therefore, is not an appropriate basis for liability under the Eighth Amendment. *See Estelle*, 429 U.S. at 107.

When an inmate has received medical treatment, there will be a violation of the Eighth Amendment only when the treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505. An inadvertent failure to provide adequate medical care, negligence, or a difference of opinion over proper medical treatment, all are insufficient to constitute an Eighth-Amendment violation. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (noting that deliberate indifference requires

"obduracy and wantonness" not "inadvertence or error in good faith"); *Estelle*, 429 U.S. at 105-07; *Mann v. Taser Int'l Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).

Plaintiff has failed to allege that Dr. Steele was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff alleges that after several physicians conducted examinations and obtained x-ray images and MRIs, a physician referred Plaintiff to Dr. Steele. Dr. Steele examined Plaintiff, obtained an x-ray image, and reviewed the image.

Based on his examination and the x-ray image, Dr. Steele determined that surgery was necessary. Although the surgery ultimately proved unsatisfactory to Plaintiff, that itself is not a basis for an Eighth-Amendment claim. Even "[i]f the doctor's judgment is ultimately shown to be mistaken, at most what would be proved is medical malpractice, not an Eighth Amendment violation." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990); *see Neal v. Parker*, No. 5:15-cv-71-MW-GRJ, 2017 WL 443163, at *1 (N.D. Fla. Jan. 11, 2017) ("While an incorrect diagnosis resulting in the unnecessary removal of a gallbladder and the failure to remove a metal clamp used during surgery may be actionable these allegations do not rise to the level of demonstrating deliberate indifference under 42 U.S.C. § 1983 . . . ."), *report and recommendation adopted*, No. 5:15cv71-MW/GRJ, 2017 WL 440727 (N.D. Fla. Feb. 1, 2017). To rise to deliberate indifference and, therefore, violate the Eighth Amendment, a physician's conduct must be not "merely accidental

inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

Additionally, Plaintiff's allegation that Dr. Winters would not have performed the surgery merely notes a difference in medical opinion. A mere difference in medical opinion is insufficient to state an Eighth-Amendment claim. *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Plaintiff simply has not alleged any facts that show that Dr. Steele's decision to perform a surgery—which ultimately proved unsatisfactory—was anything more than negligence.

Because Plaintiff has not alleged that Dr. Steele was deliberately indifferent to his serious medical needs, Plaintiff's individual-capacity claim against Dr. Steele should be dismissed with prejudice.

### 2. *Failure to State an Official-Capacity Claim Against Dr. Steele for Damages and Injunctive Relief*

Plaintiff asserts that Centurion employed Dr. Steele. Doc. 13 at 2. Therefore, Plaintiff's Eighth-Amendment official-capacity claim against Dr. Steele is in effect a claim against Centurion. Plaintiff voluntarily requested to dismiss Centurion from this action. Doc. 14. Therefore, Plaintiff's official-capacity claim against Dr. Steele

should be dismissed without prejudice consistent with Plaintiff's notice of voluntary dismissal.[5]

## C. Plaintiff Failed to State Claim Under the Fourteenth Amendment

If a constitutional claim is covered by a specific constitutional provision, such as the Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (citations omitted). Thus, a due-process analysis under the Fourteenth Amendment is inappropriate if Plaintiff's claims are covered by another constitutional amendment. *Id.*

In the instant case, Plaintiff alleges that Dr. Steele violated the Eighth Amendment by performing a "botched" surgery that resulted in permanent scarring. Similarly, Plaintiff alleges that the Transport Officers violated the Eighth Amendment by failing to secure Plaintiff in a transport vehicle and by twisting and pulling on his leg in a "cruel and ruthless way." These claims are covered by the Eighth Amendment. Thus, an analysis of Defendants' conduct under a due-process

---

[5] Even if Plaintiff intended to continue his suit against Centurion by suing Dr. Steele in his official capacity, Plaintiff has not alleged that Centurion's custom or policy was the "moving force" behind the constitutional violation. That omission warrants dismissal of this claim. *See Graham*, 473 U.S. at 166 ("[A] governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation . . . thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law.").

standard would be inappropriate, and Plaintiff has failed to state a plausible claim for a violation of his right to due process. Plaintiff's Fourteenth-Amendment claim, therefore, also should be dismissed.

## IV. Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. Plaintiff's official-capacity Eighth-Amendment claims against the Transport Officers be **DISMISSED with prejudice**, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief can be granted.

2. Plaintiff's Eighth-Amendment claims for injunctive relief be **DISMISSED with prejudice**, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief can be granted.

3. Plaintiff's individual-capacity Eighth-Amendment claim against Dr. Steele be **DISMISSED with prejudice**, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief can be granted.

4. Plaintiff's official-capacity Eighth-Amendment claim against Dr. Steele be **DISMISSED without prejudice**, in accordance with Plaintiff's notice of voluntary dismissal. Doc. 14.

5.  Plaintiff's claims under the Fourteenth Amendment be **DISMISSED with prejudice**, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief can be granted.

6.  The case be recommitted to the undersigned to address Plaintiff's remaining individual-capacity Eighth-Amendment claims against the Transport Officers.

At Pensacola, Florida, this 28th day of February, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**